## SUPREME COURT—APRIL TERM—1860.

J. T. WATERHOUSE *vs.* WILLIAM WEBSTER, TAX COLLECTOR OF HONOLULU.

DUTIES of Tax Collectors and tax payers defined.

The Collector not responsible for the nonfeasance or malfeasance of the Assessor, or that of any other officer.

The tax list, in the hands of the Tax Collector, is in the nature of an execution, running against the person and property of the party, and, if good upon its face, protects the Collector acting under it.

Goods distrained by the Tax Collector can not be replevied by the delinquent tax payer, such goods having been found in and taken from *his* possession.

This action, in another form, was commenced in the Police Court, in February last, by a requisition upon Waterhouse to show cause why the Tax Collector should not sell certain of his goods, distrained for taxes. The District Attorney having then established such a case as he thought necessary, rested ; on which the counsel for Waterhouse, Mr. Harris, moved for judgment.

Justice Davis, in an elaborate decision a few days after, ruled that this was a matter differing from an ordinary suit at law, and resting in the sound discretion of the Magistrate, and ordered the Crown Solicitor to produce evidence touching the appointment of Assessors, etc. Mr. Harris then took out an order from the Chief Justice, requiring Judge Davis to show cause why he should not proceed to judgment upon the case already made by the plaintiff in that suit. Upon hearing and argument the mandamus was denied, and appeal taken to the full Court, where the decision of the Chief Justice was confirmed. The hearing was then resumed in the Police Court, and the case being closed, judgment was given for the plaintiff. Appeal was taken upon this to the Supreme Court on points of law. On hearing in banco, the decision of the Court below was confirmed. Webster then advertised the goods for sale, when the present action was instituted and the sale suspended.

To sum up briefly the evidence adduced on both sides : On the 6th of August last, Messrs. Pease and Colborn, having received commissions and taken oath as Assessors, were gazetted

as such, and proceeded to discharge their duties. Pease left with Waterhouse a blank assessment paper, to be filled up by him. Subsequently meeting him, Mr. Waterhouse said that he could not make a return, did not recognize him as Assessor, denying the validity of his appointment; that the Assessors did not after that think it worth while to call upon Mr. Waterhouse for his return, and proceeded in conference with each other, and guided by the estimates of others, to appraise his property; that the Tax Collector, having several times called for the tax as thus assessed, on the 7th of February went, in company with Mr. Sheriff Brown, to Mr. Waterhouse's store and distrained twenty English saddles, one Mexican saddle, twelve bundles flannel shirts, for the tax of $253 12, and removed them to the Custom House. At this interview Waterhouse demanded of Webster his authority. The reply was that his authority was under the law, and that they had discussed that matter before. No authority was exhibited at that time. Captain Spencer, who was present, testified that he thought Waterhouse protested at that time that his assessment was too high.

Mr. Bates took the position that the plaintiff having made the admission that the goods were taken by the defendant, as Tax Collector, the burden of proof was thrown upon him of showing a wrongful taking; that it was to be presumed of every public officer that he is doing his duty; taxes were a debt due to the Government in return for the protection given; that Webster was not under the necessity of showing his authority or his tax roll; if he were, it would be impossible to make his collections; Webster was bound to collect according to that list as given him.

The Court held that the Tax Collector was bound to exhibit his authority so far as showing his assessment roll, just as a Sheriff must show his execution.

The commission of the Collector was put in; it was signed by R. G. Davis, acting for the Governor of Oahu, in his absence.

Mr. Harris said the law required that the commission should have the signature of the Governor and the approval of the Minister of Finance, and the commission was not good if done

J. T. Waterhouse *v.* William Webster.

subsequent to the 10th of September, the date of the gazetting of Webster in the "Polynesian." The Court thought the commission was sufficient for a *prima facie* case to go to the jury.

The commissions of the assessors were also introduced.

Upon the point of making a return to the Assessors, the Court held that Waterhouse was obliged to make his return or be doomed, but that the Assessors were to devote their attention to it by ascertaining from others of what value they supposed any person's property to be, and that they might state how they arrived at it. They need not make a valuation from personal attendance; they would be trespassers if they went upon the premises. That Mr. Waterhouse would be perfectly justified in ordering them off.

The Collector, being duly authorized and provided with the tax list, it was then his duty to make collection—his power was mandatory. If he had no option in the matter, it was in the nature of an execution. The party aggrieved had his remedy against the Assessors, after paying under duress, and not voluntarily, if they in discharge of their duty have violated the law, or against the person who receives the money, if the law is unconstitutional and void, but not against the Collector, who is bound to do his duty under the assessment handed to him. (3 Metcalf, Boston and Sandwich Glass Co. *vs.* Boston.) The Collector had the power and authority to levy immediately upon the person or property of the party in the nature of an execution. Held that the authorities fully sustained the doctrine, that the authority of the Collector was in the nature of an execution and he was bound to obey it. And if it was wrong, other parties were responsible and not he—that he could not go behind the tax duties, that no other action would lie against him than for a violation of his own duties, not even for trespass. (19 Pick., Sprague *vs.* Bailey.)

Evidence was proferred that the Civil Code, of which the tax law is a portion, was invalid; because the Legislature which had enacted it had not been duly called by and with the advice and consultation of the Privy Council; because it did not consist of at least twenty-four members at date of passage of the Code; because the Code had not been promulgated according to its own provisions, and antecedent to the action of the Assessors and the Collector.

J. T. Waterhouse *v.* William Webster.

The Court said it should hold here that, for the purposes of this act, Webster was justified by the law and bound to execute it, and that he was not bound to go into the question as whether it was invalid from any technical omission, and should rule that he was obliged to obey the law as promulgated ; that he had no business to inquire into the doings of the Assessors ; he was bound to obey his instruction.

The Court did not regard the Tax Collector as an integral part of the Government ; he was obliged to give an account of every tax in his list, and if he omitted to do so he was liable; and it was purely a matter between the Collector and the tax payer. It was a specific office for specific purposes, which he must accomplish, and for which he was responsible, and no one else. That plaintiff was undoubtedly wrong in bringing an action against the Collector ; that the Tax Collector was bound to levy, if there were goods to levy upon.

Chief Justice ALLEN charged the jury in substance as follows:

This is an action of replevin brought by the plaintiff for the possession of certain goods alleged to be seized by the defendant.

The defendant justifies the seizure, alleging that he was Collector of Taxes for the District of Honolulu, and that the plaintiff was indebted for taxes, as appeared by the tax list delivered to him for collection. The first question which arises is, is the defendant Tax Collector—with a legal appointment ? His commission is from the substitute of the Governor, duly appointed to act during his absence ;—this power of appointment is vested in the Governor by the Constitution. The commission is approved by the Minister of Finance, and bears date the 26th of October. If you are satisfied from the evidence that the Governor was absent on that date, his substitute had the power of appointment. The next question which arises in the case is, did the Governor deliver to the Tax Collector a copy of the tax list. It is made the duty of the Assessors to deliver to the Governors of the respective islands two copies of their tax list, one of which shall be forwarded by the Governor to the Minister of Finance. It is also made the duty of the Governor to deliver to the Tax Collector a copy of the tax list for his district.

J. T. Waterhouse *v.* William Webster.

The question arises in this case, was the tax list delivered by the Governor to the defendant. It appears in evidence, by the testimony of the Registrar of Public Accounts, that the copy for the Tax Collector for this district was left in the office of the Minister of Finance, as had been the custom when taxes were collected under the old law by enumeration, and without any express authority from the Governor, he delivered the list to the defendant. You must be satisfied that the tax list was delivered by the approval of the Governor. It is not essential that the delivering was made by his express order, but if with his approval, it is sufficient. Of this you must judge. If you are satisfied that he is legally appointed, and has received the tax list, you will then examine the testimony and see whether he made a call on the plaintiff at his residence or usual place of business, or otherwise gave him notice to meet him at some convenient place in the district, to demand payment of his taxes assessed against him as by the tax list. This duty is incumbent on the Collector, and you must have satisfactory proof that the defendant had this legal opportunity to pay. It is contended that it was the duty of the Collector to have shown his authority. If you are satisfied that the defendant was known generally to the Collector, and he was acting in that capacity, I do not regard it necessary that he should show his commission to every tax payer, nor his tax list, unless a request is made to him, but when a request is made for the tax list, it is his duty to show it, and if you are satisfied that the plaintiff made this request and the defendant refused, it was a violation of the law, as I regard its spirit, and you must find for the plaintiff. Every tax payer has a right to see the tax list on request.

It is contended further that this call or notice to pay should be in the month of September, October, or November, or the claim for the tax is lost. The law makes it the duty of the Collector to make the call during these months, and to pay over to the Governor the amount of taxes by him collected before the last day of December, or he is liable to forfeit ten per cent. of his commissions; and unless before the first day of February he pays to the Governor the amount of taxes prescribed in the tax list, with the exception of the school tax, it is made the duty of the Minister of Finance to commence a suit on his bond.

There is an additional provision to this effect, that he is held responsible for the full amount of taxes specified in the tax list, unless he shall file with the Governor a sworn list, giving the name, residence, and amount of tax, from whom, after using due diligence, he was unable to collect. The time for the call to be made is imperative on the Collector to fulfill the condition of his bond, but if there was an omission, it does not render the tax null and void. It is merely a declaratory provision, and not a condition precedent to the validity and legality of the law. You must be satisfied, however, that the call or the notice was made, before the seizure of the goods. This is a condition precedent, or an act to be done by the Collector before he is authorized to levy by distress on the goods of one who neglected to pay his taxes.

It is contended further, gentlemen, that the law had not been seasonably published. By the "Polynesian" of the 28th of May, the acts for the assessment of taxes, and the collection of taxes, together with the general provisions appertaining to the same, were published. It appears by the testimony of Mr. Whitney, that the entire Civil Code was published in the " Commercial Advertiser" prior to the first of October of the same year. The correctness of this testimony is not denied.

All laws, unless otherwise specially provided, take effect on the Island of Oahu ten days after their promulgation.

I have briefly given you a sketch of the duties and responsibilities of the Tax Collector. His bond is for the faithful discharge of these duties ; but he cannot incur any obligation for the discharge of any other. The Collector is not responsible for the non-feasance or mal-feasance of the Assessors, or of any other officer. This tax list is in the nature of an execution against the person and property of the party, which he has no opportunity to contest, and in this stage of the case, he can no more seek a judicial decision on the question of his liability, than he can on an execution when the Marshal seizes the property or arrests the person. The execution is mandatory in his hands, and so is the tax list in the hands of the Collector. He has no discretion; he must make the levy, or he incurs a liability on his bond. It may be asked, what is the remedy of the tax payer? He may give notice that he pays under duress,

and not voluntarily, after which he can have his legal remedy against the Assessors, if they, in the discharge of their duties, have violated the law ; or against the person who receives the money, if the law is unconstitutional and void. But it is sufficient in this action for you to be satisfied that the Collector has done his duty. The law obliges him to make the distraint, and if he does it in conformity to its provisions, to which I have drawn your attention, no action can be sustained against him— if otherwise, he is liable.

A verdict having been rendered in favor of the defendant, and exceptions being taken to the verdict, as contrary to law and evidence, and the said exceptions having been argued before the full Court ; the opinion of the Court was delivered by Chief Justice ALLEN as follows :

This is an action of replevin for certain articles of property alleged to be taken by defendant, who pleads the general issue, and also avowed the taking, under and by virtue of a tax list in his hands, as Collector of Taxes for the District of Kona, Island of Oahu.

At the trial before the Chief Justice, it appeared that the defendant had a commission of Tax Collector, and that the tax roll was delivered to him for the collection of taxes therein enumerated, and that the plaintiff had been called upon for the payment of his taxes, which he refused to make. Evidence was introduced to show the illegality of the assessment, but the Court ruled that the Collector was not answerable for the acts of any one but himself. It was contended by the plaintiff that no sufficient demand was made by the defendant for payment, and that the law under which the tax was collected, was not published in season to have force in this case and upon these parties. The Court instructed the jury that a demand was necessary ; that the law for the collection of taxes does not take effect till ten days after its promulgation ; and if they found that either was omitted, they must render their verdict for the plaintiff. The jury rendered a verdict for the defendant. There were many other points made at the time by

the plaintiff's counsel, which were overruled by the Court, but which will fully appear in the bill of exceptions.

It may be well to examine what the duties of a tax collector are.

After he has received a *copy* of tax list it is made his duty to proceed immediately in the collection.

He must call on each tax payer, or give notice for the tax payers to meet him at some convenient point. If any one refuses to pay, *he may levy on any personal property by distress*, and sell the same upon the order of the District Judge or Police Magistrate. And if no property is found, then such person, if able bodied, may be compelled to discharge the amount on the roads or public works.

His bond is for the faithful discharge of these duties, and no more. And if these are his only duties, he can not incur any obligation for the discharge of any other duty. The Collector cannot be responsible for the non-feasance of the Assessors, or his mal-feasance, or that of any other officer.

The tax list is in the nature of an execution, running against the person and property of the party, upon which he has no day in Court, no opportunity to contest it. He can no more seek a judicial decision on the question of his liability than he can on an execution, when the Marshal of the Kingdom seizes the property, or arrests the person. The execution is mandatory in his hands, and so is the tax list in the hands of the Collector. He has no discretion. He must make the levy, or is liable on his bond. What, then, is the remedy of the person assessed? It is to pay under protest; he may give notice that he pays it by duress, and not voluntarily, after which he has his remedy. The law under which the Collector acts obliges him to make the distraint. Such being the case, his duty is plain, and if he discharges it, no action can be sustained against him. And, in this action, this is the only question—whether he has done his duty under the law? (12 Pick., Preston *vs.* Boston, 14 p.; 17 Mass., Amesbury Manf. Co. *vs.* Amesbury, 461; 4 Met., Bosteer & Lund *vs.* Boston, 189 and 190·; 19 Pick., Sprague *vs.* Bailey, 440.)

In Massachusetts, where the statute on this subject of furnishing a list is the same as ours, the Court have ruled, that

J. T. Waterhouse *v.* William Webster.

where a person has not given in a list of his estate, the assessing of his property made by the assessors is so far conclusive that the tax payer is precluded from applying to the authorities for an abatement. In all cases where the party has furnished a list, application is made for an abatement to the assessors, with the right of appeal to the County Commissioners.

In case of neglect to furnish a list under their power of dooming, or estimating arbitrarily, as they must do, in the absence of the list or authoritative statement, which the tax payer is notified to make, they would be justified in increasing his personal tax, until he should think fit to give in such statement. (5 Cushing, Rep. 98, Bates *vs.* Boston.) Even if the case is as alleged, it is one of over taxation, for which the plaintiff is responsible, as he neglected to furnish the information within his own power to enable the assessors to make an accurate list. If there is an irregularity in the assessment, it will not vacate the tax list given to the collector. He is justified by the tax list, and the remedy when an injury is done may be against the assessors, who are responsible for their own personal faithfulness and integrity. (2 Greenleaf, Huse *vs.* Meuean *et al.*, 344; 10 Mass., Coleman *vs.* Anderson, 105 ; 10 Pick., Little *vs.* Merrill, 543.)

It is contended that the verdict is contrary to the law and evidence given in the case, inasmuch as the plaintiff made a demand on the defendant for the authority by which he acted, and that he produced none. It appeared in evidence that the defendant was regarded by the public as Tax Collector ; his appointment had been announced in the "Polynesian." newspaper; and he had been furnished with the tax list ; and on the trial he produced his commission from the Deputy Governor. It appeared further that the defendant went to the plaintiff's store and said to him, " I have called to collect your taxes," to which he replied that he should not pay ; that the assessment was unequal and unjust ; whereupon the defendant distrained property. It was in evidence that the defendant had previously notified him to call and pay his taxes, and had sent him a bill of the amount, and on the occasion of the distraint, the witness says, I heard plaintiff ask defendant for his authority, but he did not show it, but said his authority was under the law ; and further remarked, we have discussed the matter before. The

Court ruled that it was the duty of the Collector to show his tax list on demand, and the question for them to decide was whether he had done so. It is not necessary for a Collector to show a tax list every time he calls for the tax in those cases where he has made repeated calls. They would also consider whether the Collector had acted fairly and above board, for they would allow a liberal construction to his conduct. It was fully competent for the jury to infer from the evidence that he was fully cognizant of the Collector's authority; for he was aware of the amount of the tax, and there had been repeated conversations about the tax, and his chief complaint was that there was no proper assessment. I should infer from the evidence that, in his mind, as there was no proper assessment, therefore there was no proper authority, and not that the Collector was not duly commissioned, or that he had not the assessment roll. The Collector is liable for his duties only. It is true he must have a legal appointment and a tax list, and give the necessary notice for payment. He is justified by the tax list, even if the Court should be of opinion that the evidence was not sufficient to warrant the jury in giving a verdict for the defendant; still it is incumbent upon them to consider whether the distraint is not legal, although a demand was made of his authority and refused.

It is contended further that as the commission of the Collector was signed by a substitute of the Governor, it was necessary to show that the Governor was unavoidably absent at the time it was executed. It appeared in evidence that the Governor was absent on the island of Hawaii.

The article referred to in the Constitution is in these words: "The Governors, in case of sickness, or unavoidable absence, in all cases where no Lieutenant Governor has been appointed, have power to appoint substitutes, for whose official acts they are responsible." The article is designed to limit his power of the appointment of substitutes. It was evidently intended that the Governor should not appoint a substitute unless for good reason, of sickness or absence. The Court do not regard it necessary in this case to prove that the absence was unavoidable. If any proof was necessary, sufficient has been given to make a *prima facie* case. No rebutting testimony was given.

On charges to impeach the Governor for mal-administration of his office, that he had appointed a substitute, he would doubtless be obliged to prove, in order to defend himself, that he did so, either when he was sick or unavoidably absent. It was not intended by the Constitution that his absence should be a moral or physical necessity, but it should not be such an absence as would be an evidence of trifling with his duty.

It was further contended that it was incumbent on the Collector to show that he did receive the tax roll from the Governor, or from some person authorized by him to deliver it. It is made the duty of Assessors, in the several taxation districts, to deliver to the Governors of their respective Islands, two copies of their tax list—and it is made the duty of the Governor to deliver to each Tax Collector a copy of the tax list for his district. This is directory to the Governor, and although in this case the delivery was by the Registrar of Public Accounts, by whom it had been made for some years, there could have been no doubt in the minds of the jury that the proper paper was delivered. At any rate, it is not contended that the Assessor's list is not genuine. We regard this objection as unsound in law.

It is contended that the Collector should exhibit his authority when demanded of him. The Court ruled that, if the tax list was demanded, it was his duty to show it, and this was submitted to the jury whether there was such a demand and whether it was complied with. The jury have settled this matter on this ruling, which the Court would here remark that, upon further examination, this would not be a requisite to a good execution of the process. It would, doubtless, subject the officer, on demand and refusal, to exhibit his authority to a forcible resistance—but it would not vitiate the execution of the process. (12 Met., 211, N. Post *vs.* Cy. Com's.; 6 Cushing, 477 ; 8 Cush., 55.)

The Collector is a ministerial officer, and, therefore, cannot be liable for acting in pursuance of legal authority. The Assessors are a tribunal, invested with certain powers, and have certain duties to perform, and the Collector, being duly appointed, has his authority from the tax list. This is the same in our law, as the warrant directing the Collector to collect the tax, as by the tax list accompanying, which is pre-

scribed by the laws of many countries.   The counsel have raised many objections to the discharge of the duties of Assessors, as well as to their appointment, but as we have already decided that the Collector is answerable for his official acts only, it is unnecessary to consider them.

In the case of Howard *et al. vs.* Proctor (7 Gray's Rep., 133), which was an action of tort, against a Collector of taxes for taking a horse, the Court says : " That the warrant being good upon its face, sufficient in point of form, and coming from an authority having jurisdiction of the subject, the defendant cannot be liable for its regular execution." This rule, applicable to executive officers, includes Collectors.  A tax warrant, good upon its face protects the Collector acting under it, for he is not liable for the regularity of the meetings, town or district, or the validity of the votes by which the taxes were granted.   (Hays *vs.* Drake, 6 Gray's Rep., 387.)

If the plaintiff suffered injury from the manner in which the Collector executed his duty, he has his remedy; but it is clear that it cannot be enforced in this action.   It was, undoubtedly, the doctrine of the common law that chattels in the custody of the law could not be replevied.   But I regard the same rule now to be, and which has been recognized for a long period, that goods taken in execution or in *custodia legis,* may be replevied, if they are the goods wrongfully taken of a person who is unknown to the process.   For example, if an officer has an execution against A, and undertakes to execute it on goods in the possession of B, B may bring replevin for them—but this is not the remedy if they are the goods of A—for I regard an arrest by virtue of the tax list, by the Collector of taxes, as in the nature of an arrest at common law, upon final process. And a levy by distress upon the goods and chattels by the same authority, as in the nature of an execution.   (5 Foster's Rep., 258 ; Ilsley *et al. vs.* Stubbs, 5 Mass., 282, and cases there cited.)

In the case of Durham *vs.* Wychope, 3 Wendell, 279, the Court recognize the principle that goods taken in execution are in the custody of the law, and cannot be taken out of such custody, when the officer has found them in, and taken them out of the possession of the defendant in the execution, applies

J. T. Waterhouse *v.* William Webster.

only between the defendant and the officer. There is great propriety and wisdom in this rule. There is no dispute as to the title of the property attached. It is admitted to be in the plaintiff. For illustration, suppose the property was taken in execution against the present defendant, would it be a wise provision of law to permit the debtor longer to delay the collection of the debt, by permitting the suit of replevin? He has had his day in Court, and a judgment is recovered against him, and execution issued thereon. If this is the rule of law as applicable to the collection of executions, how much more should it be in the collection of taxes, for the faith of the Government, and perhaps its existence, may depend upon the prompt payment of the taxes. The Statute declares that the Tax Collector may levy by distress upon so much of the goods and chattels of the said person, who neglects or refuses to pay his taxes, as he may deem sufficient for the payment of taxes and expenses of collection. This is in the nature of an execution, and as Chief Justice Shaw says in Preston *vs.* Brookes, 12 Pick., 14, running against the person and property of the party, upon which he has no day in Court, no opportunity to plead and offer proof, and have a judicial decision of the question of his liability. As a general rule the officer is bound to see only that the process is in proper form, and issued from a Court of competent jurisdiction. To accomplish the purpose of the law, and to give to Courts a prompt and energetic execution of the processes issued by their authority, there can be no other rule; and the same rule, which is applicable to executive officers, includes Collectors. (Gray's Reports, 133, Howard *et als. vs.* Proctor.

In the case of Abbot *vs.* Yost, 2 Denio, 86, the Court says : "That a regular tax list, and warrant for a district tax, are a sufficient justification to the Collector when sued for taking the property of the person taxed, though the district meeting at which the tax was voted was illegal." In the case of Kellar *vs.* Savage *et als.*, 20 Maine Rep., 199, the Court say "that the Collector is bound to obey a warrant in due form, and issuing from the Assessors, though they may not have complied with every requisition of law anterior to issuing it."

The principles on which this decision is made render it unnecessary to examine more in detail the objections of the counsel for the plaintiff.

Let judgment be entered for the defendant, with costs.

C. C. Harris, Esq., for plaintiff.

A. B. Bates, Esq., for defendant.